# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALETA LILLY, on behalf of herself and all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>NESTLÉ WATERS NORTH AMERICA, INC.,<br><br>　　　　　Defendant. | **CLASS ACTION COMPLAINT**<br><br>September 19, 2017<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Aleta Lilly ("Plaintiff"), on behalf of herself and all others similarly situated, alleges as follows based upon her personal experience and the investigation of her counsel:

## NATURE OF ACTION

1.　　The bottled water industry in the United States has become a giant source of revenue and profits for the major corporations involved.  Americans, whether because of the portable convenience or their distrust of tap water, are buying more bottled water than ever.  In fact, on average, Americans drinks approximately 39 gallons of bottled water per person per year.  This is a massive source of business considering there are over 320 million Americans.

2.　　In an effort to increase profits, Defendant Nestlé Waters North America, Inc. ("Defendant") falsely and deceptively markets its bottled Poland Spring Water as being "100% Natural Spring Water."  This is solely to trick consumers into believing that the bottled water is sourced from naturally occurring springs, where consumers generally recognize that the water's quality and purity are superior to that of regular ground water.  The reality, however, is that Poland Spring Water is bottled ground water.

3.     By representing that its water is spring water, Defendant fraudulently and unduly captures the price premium associated with natural spring water.  Consumers have been misled and have overpaid for Poland Spring Water since Defendant started selling it in 1993.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members, the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

5.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events and/or omissions giving rise to Plaintiff's claims occurred in this District as Defendant is headquartered in this District.

## PARTIES

6.     Plaintiff Aleta Lilly is a natural person and a citizen of the State of California, residing in Los Angeles County.  Plaintiff purchased Defendant's Poland Spring Water when she visited Martha's Vineyard, Massachusetts in or around August of 2017.  Plaintiff paid retail prices for the bottled water in several local grocery and convenience stores.  Plaintiff purchased approximately 15-20 bottles of varying sizes.  Plaintiff chose to purchase Poland Spring Water because she believed it was truly "100% Natural Spring Water" based on Defendant's representation and that it had the quality associated with natural spring water.  Additionally, because of the "100% Natural Spring Water" representation, Plaintiff was willing to pay more for Defendant's water than some of the cheaper options which were not represented as being natural spring water.  Had Plaintiff known that Poland Spring Water was actually bottled ground water, she would not have purchased it and would instead have purchased a cheaper brand of filtered tap

water, or she would have paid less for the Poland Spring Water considering it was not actually natural spring water.

7.      Defendant Nestlé Waters North America, Inc. is a corporation incorporated in the State of Delaware with its principal place of business in Stamford, Connecticut.  Defendant sells, advertises, markets, and distributes Poland Spring Water at issue in this action.

## FACTUAL ALLEGATIONS

**Background on the Bottled Water Industry**

8.      Over the last several decades the bottled water industry in the United States has undergone significant growth and expansion.  Today, Americans buy more bottled water than beer, milk, or juice,[1] and bottled water has overtaken carbonated soft drinks as the most popular beverage in the United States.  In 2016, there were over 400 million more gallons of bottled water consumed than the 12.4 billion gallons of carbonated soft drinks consumed yearly,[2] and the bottled water industry is only expected to continue to grow.

9.      This growth in bottled water consumption has raised revenue for large bottled water producing companies.  In 2005, the United States' revenue for bottled water was $14.9 billion and is currently growing at 8% to 10% annually.[3]  In the same year, bottled water volume surpassed 7.5 billion gallons (representing a 10.7% increase from 2004), bottled water's per capita consumption was 26.1 gallons (increasing from 23.8 in 2004), and wholesale dollar sales for

---

[1]  *See* Noah D. Hall, *Federal and State Laws Regarding Bottled Water – An Overview and Recommendations for Reform*, (Dec. 12, 2007)  http://www.greatlakeslaw.org/blog/files/Noah _Hall_Bottled_Water_Testimony.pdf.

[2]  *See* Zlati Meyer, *Bottled water, not soda, is U.S.'s fave drink*, USA Today (Mar. 9, 2017), https://www.usatoday.com/story/money/business/2017/03/09/bottled-water-not-soda-uss-fave-drink/98966530/.

[3] *See* Frank I. Salazar, *Bottled Water Industry*, SBDC Net, http://www.sbdcnet.org/small-business-research-reports/bottled-water-industry.

bottled water exceeded $10 billion in 2005 (a 9.2% increase from 2004).[4]  According to Persistent Market Research, by the end of 2024, the United States bottled water market will reach $22.22 billion in value.[5]

10.     There are several bottled water producers that dominate the United States market. The largest producer is Nestlé Waters North America ("Nestlé"), which has a 2014 market share of 30.2% of the bottled water sales.[6]  Coca-Cola ("Coke") and PepsiCo. ("Pepsi") round out the top bottled water companies in the United States.[7]

11.     Nestlé focuses on "spring water" (further defined and detailed below), and markets its bottled water under different brand names by select regions.  Nestlé's brands include: "Poland Spring" (Northeast), "Arrowhead" (West), "Deer Park" (Mid-Atlantic), "Ice Mountain" (Midwest), "Ozarka" (Texas), and "Zephyrhills" (Florida), as well as the national brand "Nestlé Pure Life."  Other leading bottled water companies like Coke sells *Dasani* and distributes *Evian*, whereas Pepsi sells *Aquafina*.  Both *Dasani* and *Aquafina* are classified as purified municipal water, taken from many sources around the country.[8]

---

[4] *Id.*

[5] *See* Persistence Market Research Pvt. Ltd., *U.S Bottled Water Market will net S $22.2 Bn Revenues by end of 2024 – Persistence Market Research Report*, PRNewsire.com (Mar. 16, 2017), http://www.prnewswire.com/news-releases/us-bottled-water-market-will-net-us-222-bn-revenues-by-end-of-2024---persistence-market-research-report-616324704.html.

[6]     *See*  Hall,  *supra*,  http://www.greatlakeslaw.org/blog/files/Noah_Hall_Bottled_Water_Testimony.pdf.

[7] *See* Nestle Waters North America, *https://www.nestle-watersna.com/en/who-we-are/key-facts-and-figures/beverage-consumption-and-sales* (last visited Sept. 14, 2017).

[8] *Id.*

12.    There are several different types of water that can be sold, marketed, and bottled including the following: (1) artesian, (2) distilled, (3) mineral, (4) public water source ("P.W.S."), (5) purified, (6) sparkling, and (7) spring.[9]

13.    Artesian water is water obtained from a well that raps a confined aquifer, an underground layer of rock or sand that contains water.  One brand of artesian water is *Fiji Natural Artesian Water*.[10]

14.    Distilled water is defined as water that has been boiled and then recondensed from the steam that the boiling water produces.  Distillation is known to kill microbes and removes minerals, giving water a flat taste.  This includes *Glacéau Smartwater*.[11]

15.    Mineral water is "groundwater" that naturally contains at least 250 parts per million of dissolved solids.[12]  All minerals and other trace elements must be present in the water when it emerges at the source, such as, *Calistoga*.[13]

16.    P.W.S. is also known as municipal water supply, or tap water.  *Aquafina* and *Dasani* are examples of P.W.S.[14]

17.    Sparkling water is water that contains carbon dioxide at an amount equal to what it contained when it emerged from its source, such as *Perrier*.[15]

---

[9] *See Knowing where your bottled water comes from Artesian, spring, purified, and sparkling waters may be treated differently or come from different places*, Consumer Reports (July 2012), https://www.consumerreports.org/cro/magazine/2012/07/do-you-know-where-your-bottled-water-comes-from/index.htm.

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

18.    Lastly, spring water is defined as water which is derived from an underground formation in where it flows naturally to the earth's surface.  Spring water must be collected at the spring or through a borehole tapping the underground formation (aquifer) feeding the spring such as Arrowhead Mountain Spring Water (Nestlé), and *Evian*.[16]  Consumer preferences are shown to favor bottled water labeled as "spring water" over bottled water from other sources, including municipal supply.[17]

**Fundamental Hydrogeological Principles**

19.    Defendant falsely advertised Poland Spring's "ground water" as "spring water."

20.    "Groundwater" is the water found underground in the cracks and spaces in soil, sand, and rock.  It is stored in and moves slowly through geologic formations of soil, sand, and rocks called aquifers.  Generally, aquifers are typically made up of gravel, sand, sandstone or fractured rock, such as limestone.  Water can easily move through these materials because they have large connected spaces that make them permeable.  The speed at which groundwater flows depends on the size of the spaces in the soil or rock and how well the spaces are connected.[18]

21.    Additionally, groundwater can be found almost everywhere depending on how deep or shallow the water table is.  Specifically, heavy rains or melting snow may cause the water table to rise, or heavy pumping of groundwater supplies may cause the water table to fall.  Groundwater supplies are replenished by rain and snow melt that seeps down into the cracks and crevices beneath the land's surface.[19]

---

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

22.    Water in aquifers can be derived for human consumption naturally through a spring or can be discharged into lakes and streams.  Groundwater can also be extracted through a well drilled into the aquifer.[20]  A well is a pipe in the ground that fills with groundwater.  This water can be brought to the surface by a pump.  Shallow wells may go dry if the water table falls below the bottom of the well.  Some wells, called artesian wells, do not need a pump because of natural pressures that force the water up and out of the well.[21]

23.    In areas where material above the aquifer is permeable, pollutants can readily sink into groundwater supplies.[22]  Therefore, groundwater can then become polluted by landfills, septic tanks, leaky underground gas tanks, and from the overuse of fertilizers and pesticides.  If groundwater becomes polluted, it will become unsafe to drink.[23]



---

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.*

24.    A "well" or "artesian well" is a hole drilled into the ground to access water contained in an aquifer.  A pipe and a pump are used to pull water out of the ground, where a screen filters out unwanted particles that could clog the pipe.[24]  More than 42 million people in the United States use individual or private wells to supply water for their families.[25]



25.    As outlined below in greater detail, Defendant has placed a number of artesian wells in or around what they purport as "spring" sites.  These wells are not considered springs either under the U.S. Food & Drug Administration ("FDA") standard or under the scientific understanding of hydrogeological principles.  Therefore, Defendant has misrepresented that water from its artesian wells are "spring water," since it is groundwater.

**FDA Regulations for Bottled "Spring Water"**

26.    Bottled water is regulated by the federal government as a food product by the FDA. FDA regulations provide guidance for labeling bottled water and according to the FDA, "spring

---

[24] *Id.*

[25] *Id.*

water" must be (1) derived from an underground formation, (2) from which a "natural force" causes water to "flow to the surface," and (3) through a "natural orifice."[26]

27.    The FDA also states that "spring water" must be collected (1) directly "at the spring" or (2) through a bore hole (or a well) tapping the underground formation feeding the spring.[27]  The requirements for the "five bore hole collections" test for wells is the following: (1) the water collected from each bore hole must be from the same underground stratum as the spring; (2) there must be a measurably hydraulic connection using a hydrogeological valid method between the bore hold and the natural spring; (3) the water must have all the physical properties, before treatment as the water that flows naturally to the surface of the earth at the spring; (4) the water must be of the same composition and quality before treatment as the water flowing naturally to the surface of the earth at the spring and, (5) the water must continue to flow naturally to the surface through the spring's natural orifice—that is if the use of the wells stop the spring's natural flow of the water, the water collected from the wells cannot be labeled as "spring water."[28]

28.    In layman's terms, the FDA requires a bottled water producer to draw water directly from a spring, or from groundwater, that has a direct hydrological connection to a spring's surface. Nestlé's Poland Spring water does not comply with this definition of "spring water."

29.    Under 21 C.F.R. § 165.110, the FDA's standards for the identification and labeling of bottled drinking water takes into account the foregoing hydrogeological principles and require the bottled water industries to label their product offerings accordingly.

---

[26] 21 C.F.R. § 165.110(a)(2)(vi).

[27] *Id.*

[28] *Id.*

30.    For labeling purposes, the FDA requires that bottled water intended for human consumption be labeled as either "bottled water" or drinking water."  Exceptions apply for water products meeting specific FDA definitions or "standards of identity."  Such water products may be labeled as (1)"artesian water"; (2)"ground water"; (3)"mineral water"; (4)"purified water"; (5)"sparkling water"; (6)"spring water"; (7)"sterilized water"; or (8)"well water."[29]

31.    In particular, if a company labels bottled water as "spring water," it must "flow" to the surface, meaning that the spring water must have a perceptible current at the spring's orifice. This does not include groundwater that emerges from the earth via seepage because then the spring water label would include water from any pond, swamp, river, lake or stream.  This emphasizes the point that water must be driven by natural forces through a natural, not a man-made opening.[30] Here again, Defendant's labeling does not comply with FDA regulations.

32.    In the Federal Register of January 5, 1993 (58 FR 393), the FDA published a proposal to establish a standard of identity in Section 165.110(a) for bottled water. Simultaneously, the FDA proposed to revise the definition for bottled water in the quality standard to include mineral water and ingredient uses of this product.[31]

33.    Then, the FDA's published "Supplementary Information," which provided an explanation on the standards and comments received during the notice-and-comment proceedings in the course of its rulemaking process.[32]  There were several items discussed that provided a

---

[29] 21 C.F.R. § 165.110(a)(2).

[30] *Id.*

[31] *See* 21 CFR Parts 103, 129, 165, and 184 (Nov. 13, 1995), https://www.gpo.gov/fdsys/pkg/FR-1995-11-13/pdf/95-27798.pdf.

[32] *Id.*

comprehensive understanding to the FDA's regulations and Defendant's fraudulent false advertising scheme.

34.    The FDA has stressed that the "standard of identity" definitions of bottled water are to protect consumers.[33]  For that reason, the FDA found that it was critical for a manufacturer of spring water to define exactly where the water comes from.[34]

35.    In particular, the FDA stated that "it is critical that manufacturers of 'spring water' identify the exact location of the natural orifice where the spring flows from the earth" and to maintain records of these locations in order to "provide FDA with this information upon request."[35]

36.    Any well water should have the same physical properties, composition, and quality as water that flows naturally to the earth.  The FDA's concern was ensuring that water collected by a well has the same characteristic and properties from the same underground stratum.  For example, the same turbidity, color, taste, pH balance, mineral and organic content, odor, temperature, molecular structure, or hardness.[36]

37.    Lastly, the spring must continue to flow through its natural orifice while any well is pumping; neither wet spots on the ground nor artificial alterations of the ground qualify as springs.[37]  The FDA also imposes on all bottlers of spring water an obligation to assure that water collected via well is "the same" as water collected at the spring's orifice.[38]  If while checking the

---

[33] *Id.* at 57090.

[34] *Id.*

[35] *Id.* at 57096.

[36] *Id.* at 57093, 57096.

[37] *Id.* at 57094-95.

[38] *Id.* at 57094.

water, the water's characteristics continually change, it is not "spring water," but instead influenced by surface water.

38.     Poland Spring water cannot be advertised as natural "spring water" when the water has added ingredients.  According to one *Time* article, bottled water companies are purifying water, but then adding ingredients back.[39]  For example, Nestlé Pure Life's ingredient list identifies calcium chloride, sodium bicarbonate, and magnesium sulfate.

39.     To support this theory, in 1999, the Natural Resources Defense Council came out with a study about the merits and safety of bottled water.  It found no assurance that bottled water is cleaner or safer than tap, and that an estimated 25 percent of bottled water is merely tap water in a bottle.[40]

**Defendant's Purported Eight Natural Springs**

40.     On the Poland Spring website, Defendant advertises that anyone can come and visit one of the eight natural springs that supply Poland Spring's supposed "spring water" to customers. They state, "Grab your coat, lace up your hiking boots and join us [Poland Spring] on a tour of Maine as we visit each spring."[41]  In addition, Defendant's state, "now that you can locate each spring, learn about the science behind spring water.  We'll show you how spring water gets its start and the water cycle that makes it possible to have Poland Spring® Brand 100% Natural Spring Water available throughout the Northeast."[42]

---

[39] *See* Becca Stanek, *Why Your Bottled Water Contains Four Different Ingredients*, Time (Jul. 24, 2014), http://time.com/3029191/bottled-water-ingredients-nutrition-health/.

[40] *See* Mary Pols, *Poland Spring Reaches high watermark*, Press Herald (updated, July 1, 2016), http://www.pressherald.com/2016/06/26/water-world/.

[41] *See* Poland Spring, https://www.polandspring.com/our-springs/ (last visited Sept. 14, 2017).

[42] *Id.*

41.    The website lists the following eight springs: (1) Poland Spring, (2) Garden Spring, (3) Cold Spring, (4) Evergreen Spring, (5) Clear Spring, (6) White Spring, (7) Spruce Spring, and (8) Bradbury Spring.

42.    In conjunction with listing out all of the supposed natural springs, Defendant uses photographs of natural springs, forests, woods, and high mountains to show that Poland Spring water is truly from natural springs in Maine.  There is no proof that any of these eight "natural springs" qualify as a spring within the meaning of the applicable FDA regulations; instead, Poland Spring brand is simply groundwater.

### 1.    The "Poland Spring" Site

43.    The "Poland Spring" site is located in Poland, Maine.

44.    Defendants assert that "Poland Spring" was one of the original springs used to bottle the brand's spring water.

45.    However, Defendant no longer uses "Poland Spring" to supply spring water as the flow of the spring has become non-extractable since 1967.  The levels of spring water are too low for commercial use.  Even though Defendant admits that it no longer uses the historic "Poland Spring" as a source for its Poland Spring Water, it does not state where its "spring" in Poland Spring is now located.  Below, is the "Poland Spring" site depicted on the Poland Spring website:



46.    Defendant's "Poland Spring" site fails the FDA's spring water standard of identity because it is not hydraulically connected to a genuine natural spring.  Defendant asserts that the well is connected to "subaqueous springs" in the middle of a lake, but it has never proved by valid scientific means that such spring exist.

47.    Defendant makes "Poland Spring" inaccessible to the public.  The site is guarded by "No Trespassing" signs, is behind wooded areas, which are incapable of being seen from the outside grounds.  As a result, this prevents the general public from confirming the existence of the spring.

48.    Because the historic "Poland Spring" was a bedrock spring, all Poland Spring Water produced from Defendant's eight wells come from a different stratum and have neither "all the physical properties" nor "the same composition and quality" as any water that may still trickle to the surface at the historic "Poland Spring."

49.    Today, no water trickles naturally to the surface at the historic "Poland Spring." That spring is now enclosed in a shrine-like building, with the supposed spring bubbling into a pool of water that is shielded from public access by a glass barrier.

50.    In conclusion, the water that Defendant collects at its Poland Spring site does not satisfy the FDA's standard of identity for spring water: (i) it does not meet the agency's three-part definition of spring water; (ii) it is not collected in compliance with FDA regulations governing collection via bore hole; and (iii) despite Defendant's labels touting Poland Spring Water as "100% Natural Spring Water," it is in reality nothing more than groundwater.

### 2.    The "Clear Spring" Site

51.    Poland Spring's "Clear Spring" site is falsely depicted to be located in Hollis, Maine.

52.     Defendant owns and operates five wells in Hollis, all of which are located near a wetland enclosing man-made canals.

53.     Defendant collects water from the aquifer underlying the wetland sourced by groundwater seepage and precipitation.

54.     In a PBS 2008 NewsHour Program, the "Clear Spring" is shown with water flowing from a man-made orifice at the bottom of one of the canals.  This suggests that Defendant ran pipes from wells into the wetland's canals in order to artificially create the illusion of a natural flow in the canals.[43]

55.     In reality, no natural spring exists on Defendant's property in Hollis.



---

[43] *See Bottling Giant, Maine Residents Battle Over Water*, PBS (Aug. 18, 2008), http://www.pbs.org/newshour/bb/environment-july-dec08-waterbottle_08-18/

56.   Accordingly, the water that Defendant collects at its "Clear Spring" site does not satisfy the FDA's standard of identity for spring water: (i) it does not meet the agency's three-part definition of spring water; (ii) it is not collected in compliance with FDA regulations governing collection via bore hole; and (iii) despite Defendant's labels touting Poland Spring Water as "100% Natural Spring Water," it is in reality nothing more than groundwater.

### 3.   The "Garden Spring" Site

57.   The "Garden Spring" is said to be located in Poland, Maine.

58.   In or around 1989, the Maine Bottling Company drilled a well nearby and started collecting and selling the groundwater it collected from the "Garden Spring."

59.   Nestlé Waters subsequently acquired this site and then modified a portion of the nearby wetlands in order to isolate one of the man-made holes and preserve its existence.  Nestlé now falsely represents that this old, flooded gravel pit contains a naturally occurring spring.  Below is a picture of the Garden Spring as depicted on Defendant's website:



60.      In sum, the water that Defendant collects at its "Garden Spring" site does not satisfy the FDA's standard of identity for spring water: (i) it does not meet the agency's three-part definition of spring water; (ii) it is not collected in compliance with FDA regulations governing collection via bore hole; and (iii) despite Defendant's labels touting Poland Spring Water as "100% Natural Spring Water," it is in reality nothing more than common groundwater.

### 4.      The "Evergreen Spring" Site

61.      Poland Spring's "Evergreen Spring" is falsely said to be located in Fryeburg, Maine.

62.      Defendant's purported "Evergreen Spring," however, is a small man-made pond located near a well owned by the Fryeburg Water Co. ("FWC").

63.      FWC is a public utility chartered in the late 19th century to supply the municipality's water needs.  FWC owns two wells in the area, one of which supplies tap water to the village of Fryeburg, while the other Nestlé Waters uses to collect well water and bottle it as Poland Spring.

64.      Because "Evergreen Spring" is man-made, it would certainly not qualify as a "spring" under FDA regulations.  Therefore, Defendant should have labeled its water coming from a "municipal source" rather than from a "natural spring."



65.     Thus, the water that Defendant collects at its "Evergreen Spring" site does not satisfy the FDA's standard of identity for spring water: (i) it does not meet the agency's three-part definition of spring water; (ii) it is not collected in compliance with FDA regulations governing collection via bore hole; (iii) despite Defendant's labels touting Poland Spring Water as "100% Natural Spring Water," it is in reality nothing more than common groundwater; and (iv) in violation of the FDA's labeling requirements, Defendant does not indicate on its Poland Spring Water labels that the water is sourced from a municipal water system.

**5.      The "Cold Spring" Site**

66.     The "Cold Spring" is allegedly located in Denmark, Maine.

67.     The Maine Geological Survey confirms that there is no record of a "Cold Spring" existing in the vicinity of Denmark.

68.     In a 2005 application to the Town of Denmark for a Water Extraction Permit (the "Permit Application") there are no photographs, drawings, or diagrams showing the natural orifices of these purported springs.[44]

69.     The Permit Application only describes a form of seepage, which does not qualify as a spring as defined by FDA regulations.[45]

---

[44] *See* Application of Poland Spring Bottling Company, A Division of Nestle Waters North America, Inc. for Renewal of Permit for Water Extraction from Cold Spring in Denmark, Maine, and for Amendment of Permit, Decision of Board of Selectmen, Town of Denmark Board of Selectmen (Jan. 26, 2009), http://www.denmarkmaine.org/vertical/sites/%7BBE77E955-D19E-4E64-AF6E-F999265ED75B%7D/uploads/Poland_Spring_Water_Extraction_Permit_-_December_2008.pdf

[45] *Id.*



70.    Accordingly, the water that Defendant collects from its "Cold Spring" site does not satisfy the FDA's standard of identity for spring water: (i) it does not meet the agency's three-part definition of spring water; (ii) it is not collected in compliance with FDA regulations governing collection via bore hole; and (iii) despite Defendant's labels touting Poland Spring Water as "100% Natural Spring Water," it is in reality nothing more than common groundwater.

### 6.    The "White Cedar Spring" Site

71.    The "White Cedar Spring" is said to be located in Dallas Plantation, Maine.

72.    However, as with Defendant's other purported "springs," the Maine Geological Survey does not indicate the existence of any natural spring called "White Cedar Spring." Like other of Defendant's purported "springs," White Cedar Spring appears to be nothing more than a small pond, created artificially when a berm was raised to support a railway line, located near Defendant's two wells in the area.

73.    Defendant's regulatory filings submitted in support of its application to develop the area conspicuously make no mention of the berm, and assert instead that groundwater at the site

was discharged as a natural spring. Nor did any of Defendant's regulatory filings demonstrate that White Cedar Spring satisfied the elements of the FDA's standard of identity and qualified as a natural spring.



Saddleback Lake
Near White Cedar Spring

74.    Accordingly, the water that Defendant collects from its "White Cedar Spring" site does not satisfy the FDA's standard of identity for spring water: (i) it does not meet the agency's three-part definition of spring water; (ii) it is not collected in compliance with FDA regulations governing collection via bore hole; and (iii) despite Defendant's labels touting Poland Spring Water as "100% Natural Spring Water," it is in reality nothing more than common groundwater.

**7.    The "Spruce Spring" Site**

75.    The "Spruce Spring" site is allegedly located in Pierce Pond Township, Maine.

76.    The Maine Geological Survey does not indicate the existence of this spring and there is no reference in the deeds to any "Spruce Spring."

77.    The hydrogeological data, which was submitted to the Maine Department of Environmental Protection in 2004, indicates the "spring" at Pierce Pond Township is just groundwater seepage.



78.    Accordingly, the water that Defendant collects from its "Spruce Spring" site does not satisfy the FDA's standard of identity for spring water: (i) it does not meet the agency's three-part definition of spring water; (ii) it is not collected in compliance with FDA regulations governing collection via bore hole; and (iii) despite Defendant's labels touting Poland Spring Water as "100% Natural Spring Water," it is in reality nothing more than common groundwater.

**8.    The "Bradbury Spring" Site**

79.    The "Bradbury Spring" is depicted to be located in Kingfield, Maine.

80.    The Maine Geological Survey has no records of "Bradbury Spring's" actual existence and there is no publicly available records that confirm the existence as well.

81.    It is more likely that Defendant uses the nearby rivers and channels of surface water to collect a mixture of groundwater and surface water and falsely present it to consumers as natural "spring water."



82.    Accordingly, the water that Defendant collects from its "Bradbury Spring" site does not satisfy the FDA's standard of identity for spring water: (i) it does not meet the agency's three-part definition of spring water; (ii) it is not collected in compliance with FDA regulations governing collection via bore hole; and (iii) despite Defendant's labels touting Poland Spring Water as "100% Natural Spring Water," it is in reality nothing more than common groundwater, likely mixed with surface water.

**Defendant's Labeling of 100% Natural Spring Water Is False and Misleading**

83.    For several reasons, Poland Spring's bottled water and labeling of "100% Natural Spring Water" is both false and misleading.

84.    First, affixed on each and every Poland Spring bottled water is a label that states in clear and conspicuous language, "100% Natural Spring Water."  *See* images below.





85.    Second, Poland Spring's labels and marketing materials lead consumers to believe that Poland Spring water comes from eight natural "springs" that they can visit.  These natural springs include: Poland Spring, Clear Spring, Garden Spring, Evergreen Spring, Cold Spring, White Spring, Spruce Spring, and Bradbury Spring.  The truth is, a majority of the springs have never been shown to exist and therefore, mislead consumers to believe that their drinking water is in fact sourced from real, *live* natural springs.

86.    Third, the majority of Poland Spring Water labels throughout the product's history bear images suggestive of a natural spring located in a pristine wilderness.  Again, given that none of Defendant's water is sourced from natural springs, this is highly misleading.

87.    Lastly, Poland Spring's groundwater has been allegedly known to be contaminated since several of the springs are near landfills, ash piles, and other dangerous sources of toxins.

88.    Defendant's conduct is a large scale fraudulent scheme to get consumers to believe that they are in fact drinking natural "spring water," when they are simply profiting off of selling groundwater.

## ALL STATUTES OF LIMITATIONS ARE TOLLED

**Fraudulent Concealment**

89.    The FDA enacted regulations setting forth the standards of identity for bottled water in 1995.  Defendant has known since then that its labeling and marketing of Poland Spring Water as "100% Natural Spring Water" is false and deceptive.

90.    Defendant's false and deceptive labeling and marketing of Poland Spring Water was at all relevant times known by and observable to only Defendant, its agents, and its employees, and was at all relevant times concealed from Plaintiff, Class members, Multistate Class Members, and other purchasers of Poland Spring Water.

- 24 -

91.    Since at least November 5, 2003, all applicable statutes of limitations have been tolled by Defendant's active and knowing fraudulent concealment and denial of the facts alleged in this Complaint.

**Estoppel**

92.    Defendant was and is under a continuous duty to disclose to Plaintiff and Class members the true characteristics and nature of its Poland Spring Water products.  Instead, Defendant actively, and beyond Plaintiff and the Class's control, knowingly concealed and misrepresented the true characteristics and nature of those products.

93.    Plaintiff and Class members reasonably relied on Defendant's knowing and affirmative misrepresentations and were unable to discover Defendant's active concealment of these facts despite diligently pursuing their rights.  For these reasons, Defendant is estopped from relying on any statute of limitations in defense of this action.

**Discovery Rule**

94.    The causes of action alleged herein did not accrue until Plaintiff and the Class discovered that Defendant's Poland Spring Water did not, in reality, contain spring water as defined by the FDA.

95.    Before the filing of this action and/or the results of the investigation that led to this action becoming known to them, Plaintiff and Class members had no realistic ability to discern that Poland Spring Water does not contain spring water as defined by the FDA.

## CLASS ACTION ALLEGATIONS

96.    Plaintiff brings this suit as a class action on behalf of herself and all others similarly situated as members of the proposed Class pursuant to Rules 23(a), (b)(2), (b)(3), and/or (c)(4) of

the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

97.    The proposed nationwide class Plaintiff seeks to represent is defined as follows:

**All persons or entities in the United States that bought (not for resale) Poland Spring Water after November 5, 2003 to the present (the "Nationwide Class" or the "Class").**

98.    In addition, Plaintiff seeks to represent a sub-class of Class members that is defined as follows:

**All persons or entities in Alaska, California, Colorado, Delaware, Iowa, Kansas, Maine, Minnesota, Missouri, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Texas, Utah, Vermont, Virginia, Washington, West Virginia, and Wyoming from that bought (not for resale) Poland Spring Water after November 5, 2003 to the present (the "Multistate Class").**

99.    Excluded from the Classes are: (1) Defendant; any entity or division in which it has a controlling interest; its legal representatives, officers, directors, assignees, and successors; its current and former employee; and (2) the judicial officers presiding over this matter and members of their immediate families.

100.    The Class and Multistate Class include purchases of Poland Spring Water between November 5, 2003 and the present (the "Class Period").

101.    Plaintiff reserves the right to amend the Class definitions and to add additional sub-classes as appropriate if discovery and further investigation reveal that the Class definitions should be expanded, otherwise divided into subclasses, or modified in any way.

**Numerosity & Ascertainability**

102.    Although the exact number of Class and Multistate Class members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that

joinder is impracticable.  Nestlé Waters sells approximately one billion gallons of Poland Spring Water per year in the United States.

103.    The disposition of the claims of the Class and Multistate Class members in a single action will provide substantial benefits to all parties and to the Court.  Class and Multistate Class members are readily identifiable by objective means through reasonable effort, including from purchase records maintained by retailers.

**Typicality**

104.    Plaintiff's claims are typical of the claims of the Class and Multistate Class members, as Plaintiff and the other members of the Class and Multistate Class sustained damages arising out of the same wrongful conduct by Defendant, as alleged herein.

**Adequate Representation**

105.    Plaintiff will fairly and adequately represent and protect the interests of the Class and the Multistate Class.  Plaintiff has retained counsel with substantial experience in prosecuting complex and class action litigation nationwide, including consumer class actions.

106.    Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Class and the Multistate Class, and have the financial resources to do so.  Neither Plaintiff nor her counsel have interests adverse to those of the Class or the Multistate Class.

**Predominance of Common Issues**

107.    There are numerous questions of law and fact common to Plaintiff and Class and Multistate Class members that predominate over any question affecting only individual Class or Multistate Class Members, the answer to which will advance resolution of the litigation as to all Class and Multistate Class members.  These common legal and factual issues include, *inter alia*:

   a.   Whether Defendant engaged in the unlawful conduct alleged herein;

b.  Whether Defendant's conduct alleged herein constituted a breach of express warranty;

c.  Whether Defendant's conduct was fraud;

d.  Whether Defendant complied with FDA regulations governing the labeling of bottled water;

e.  Whether Defendant bottled, marketed, distributed or sold Poland Spring Water under false and deceptive circumstances;

f.  Whether Defendant's conduct harmed Plaintiff and other members of the Class and Multistate Class;

g.  Whether Plaintiff and other members of the Class and Multistate Class overpaid for Poland Spring Water;

h.  Whether Defendant's conduct tolls applicable limitations periods by acts of fraudulent concealment, application of the discovery rule, and/or equitable estoppel;

i.  Whether the Court should enjoin Defendant from continuing to engage in the conduct complained of herein;

j.  The appropriate measure of relief, including, but not limited to, preliminary injunction; and

k.  The extent of the damages caused by Defendant's acts.

**Superiority**

108.    Plaintiff and other Class and Multistate Class members have all suffered and will continue to suffer harm and damages as a results of Defendant's unlawful and wrongful conduct. A class action is superior to other available means for the fair and efficient adjudication of this controversy.

109.    Absent a class action, most Class and Multistate Class members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of the individual Class and Multistate Class members' claims, it is likely that few if any Class or Multistate Class members could afford to seek legal redress for Defendants' misconduct as alleged herein.  Absent a class action, Class and Multistate

Class members will continue to incur damages, and Defendant's misconduct will continue without remedy.

110.    Class action treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class action treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

### COUNT I

**Fraud**
**(On Behalf of the Nationwide Class)**

111.    Plaintiff repeats, realleges, and incorporates by reference each of the foregoing allegations as though fully set forth herein.

112.    Plaintiff brings this count individually and on behalf of the Nationwide Class.

113.    Defendant intentionally, or with reckless disregard for the truth, concealed from Plaintiff that its Poland Spring Water fails to comply with FDA's standard of identity for spring water.  In doing so, Nestlé deprived Plaintiff and Class members of material information that was relevant to their purchasing decision.

114.    Nestlé Waters affirmatively misrepresented to Plaintiff, on the company's Poland Spring Water bottle labels, that Poland Spring Water is "100% Natural Spring Water" bottled from natural springs in Maine.  The Poland Spring Water, however, does not contain spring water within the meaning of FDA regulations governing the sale of bottled water, and as such is not "100% Natural Spring Water."

115.    Nestlé Waters knew that these representations were false when made.

116.    Nestlé Waters had a duty, imposed by FDA regulations, to label its Poland Spring Water bottles accurately as another type of water—e.g., "bottled water," "drinking water," "well

water," "ground water," or "purified water"—instead of labeling it "100% Natural Spring Water" because none of the water that Nestlé Waters bottled or sold as Poland Spring Water was sourced from a natural spring or qualified as spring water within the FDA's standard of identity.

117.   In purchasing Poland Spring Water, Plaintiff and the other Class members relied on the misrepresentations on Nestlé Waters' labels.  Had Nestlé Waters disclosed the truth about its Poland Spring Water's characteristics and source, Plaintiff and the other Class members would not have purchased Poland Spring Water or would have paid substantially lower prices for it.

118.   Nestlé Waters' misrepresentations concerned facts that would typically be relied on by a consumer purchasing bottled spring water, and as such, these misrepresentations were material.

119.   As a result of their reliance on Nestlé Waters' false and deceptive labeling of Poland Spring Water, Plaintiff and the other Class members have been injured in an amount to be proven at trial, including but not limited to their lost benefit of the bargain and overpayment at the time of purchase of Poland Spring Water.

120.   Plaintiff and the Class are entitled to an award of punitive damages because Defendant's conduct was knowing, intentional, with malice, demonstrated a lack of care, and was in reckless disregard for the rights of Plaintiff and the Class members.

121.   Plaintiff and the Class face a threat of continuing harm arising from Defendant's deceptive practices and are entitled to a permanent injunction barring Defendant from labeling, marketing, and selling Poland Spring Water as "spring water."

## COUNT II

### Breach of Express Warranty
### (On Behalf of the Multistate Class)

122.    Plaintiff repeats, realleges, and incorporates by reference each of the foregoing allegations as though fully set forth herein.

123.    Plaintiff brings this Count individually and on behalf of the Multistate Class.

124.    Plaintiff and members of the Multistate Class purchased the Poland Spring Water either directly from Defendant or from retail markets and/or grocery stores, among others.

125.    Defendant, as the designer, manufacturer, producer, marketer, distributor, or seller expressly warranted that the Poland Spring Water was fit for its intended purpose by making the express warranty that the bottled water is "100% Natural Spring Water" bottled from natural springs in Maine.

126.    Defendant's affirmations of fact and promises made to Plaintiff and the Class on the Poland Spring Water labels became part of the basis of the bargain between Defendant on the one hand, and Plaintiff and the Multistate Class members on the other, thereby creating express warranties that the Poland Spring Water would conform to Defendant's affirmations of fact, representations, promises, and descriptions.  Plaintiff and the Multistate Class members relied on the affirmations of fact and promises on the labeling that Poland Spring Water is bottled from "100% Natural Spring Water."

127.    Defendant breached this warranty and/or contract obligation by placing the bottled Poland Spring Water into the stream of commerce and selling it to consumers, when it does not have the properties it was represented to possess. Rather, the Poland Spring Water is bottled ground water and does not does not contain spring water within the meaning of FDA regulations governing the sale of bottled water, rendering the bottled water unfit for its intended use and purpose. These

material misrepresentations deceptively misled Plaintiff and members of the Multistate Class into believing that the bottled water's quality was of a higher standard than it actually was, and thus Plaintiff and members of the Multistate Class overpaid for it.

128.   The deceptive and untrue representations about the source of Poland Spring Water at issue herein existed when the Product left Defendants' possession or control and was sold to Plaintiff and the Multistate Class members. The defects and/or misrepresentations were not discoverable by Plaintiff and the Multistate Class members at the time of their purchase of the bottled water.

129.   As the designer, manufacturer, producer, marketer, distributor, or seller of the bottled water, Defendant had actual knowledge of the breach, and given the nature of the breach, *i.e.*, false representations regarding the bottled water's quality, Defendant necessarily had knowledge that the representations made were false, deceptive and/or misleading.

130.   Defendant was provided further notice of the bottled water's defects and the breach of warranties via filed class action complaints regarding this matter, among other sources.

131.   Plaintiff and Multistate Class members were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Poland Spring Water if they had known the true facts, that the bottled water did not have the characteristics, quality, or value as promised, or Plaintiff and the Multistate Class members would have paid less for the Poland Spring Water if it had been properly labeled as groundwater, well water, purified water, or drinking water instead of being mislabeled as "100% Natural Spring Water."

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff demands judgment against Defendant as follows:

A.    Determining that the instant action may be maintained as a class action under Federal Rule of Civil Procedure 23, and appointing Plaintiff to represent the Class and Multistate Class; and appointing Plaintiff's counsel to represent the Class and Multistate Class.

B.    Awarding Plaintiff and the other members of the Class and Multistate Class statutory, treble, punitive, or any other form of damages provided by and pursuant to the statutes cited above;

C.    Awarding Plaintiff and the other members of the Class and Multistate Class restitution, disgorgement or other monetary or equitable relief provided by and pursuant to the common law claims and statutes cited above or as the Court deems just and proper;

D.    Enjoining Defendant from continuing the wrongful acts and practices alleged;

E.    Declaring Defendant's conduct herein as unlawful;

F.    Awarding Plaintiff and the other members of the Class and Multistate Class pre-judgment and post-judgment interest;

G.    Awarding Plaintiff and the other members of the Class and Multistate Class reasonable attorneys' fees and costs of suit, including expert witness fees; and

H.    Awarding such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands trial by jury.


Dated: September 19, 2017                **LEVI & KORSINSKY, LLP**


By:*/s/ Shannon L. Hopkins*
    Shannon L. Hopkins

Shannon L. Hopkins
shopkins@zlk.com
733 Summer Street, Suite 304
Stamford, CT 06901
Telephone: (203) 992-4523
Facsimile: (212) 363-7171

**LEVI & KORSINSKY, LLP**
Rosemary M. Rivas (to be admitted *pro hac vice*)
rrivas@zlk.com
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

*Counsel for Individual and Representative*
*Plaintiff Aleta Lilly*